Estate of Hiram S. Brown, Deceased, Mae Maltz Brown and Hiram S. Brown, Jr., Executors v. Commissioner.
Estate of Brown v. Commissioner
Docket No. 54269.
United States Tax Court
T.C. Memo 1956-240; 1956 Tax Ct. Memo LEXIS 51; 15 T.C.M. (CCH) 1238; T.C.M. (RIA) 56240; October 31, 1956
*51 Held, real property owned by decedent at the date of his death had a fair market value of $100,000 at that time for Federal estate tax purposes. Francis A. Devin, Esq., 1 Wall Street, New York, N. Y., for the petitioners. Clarence P. Brazill, Jr., Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in Federal estate tax determined against the Estate of Hiram S. Brown in the amount of $10,384.95. The sole issue for decision is the value, for Federal estate tax purposes, of certain real estate which was owned by decedent at the date of his death. Concessions have been made with respect to other issues which will be taken into account under a Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. The executors were duly appointed and qualified for the Estate of Hiram S. Brown (hereinafter referred to as the decedent), who died May 4, 1950. Mae Maltz Brown was the decedent's wife, and Hiram S. Brown, Jr., his son. The estate tax return herein involved was filed by the executors on July 24, 1951, with *52 the former collector of internal revenue for the fourteenth district of New York. Among the properties owned by the decedent at his death was a tract of land located in Kent County, Maryland, known as "Godlington Manor." This particular property was included in decedent's Federal estate tax return at a valuation of $80,000, determined as of the date of death. In his notice of deficiency, respondent determined that "Godlington Manor" had a fair market value of $120,000 on the basic valuation date, May 4, 1950. On May 4, 1950, "Godlington Manor" was operated by decedent as a farm. In consisted of approximately 440 acres located on the Chester River, about four miles from the community of Chestertown, Maryland. The "Manor's" frontage on the Chester River was about one and one-half miles, composed, in part, of a bluff averaging some 20 feet in height running to the shore line, gullies and cuts, marsh land, and an area of quicksand. There was no beach, and swimming in the Chester River at this point was precluded by tides and sewage contamination. The total area of "Godlington Manor" was divided into the following general categories, with an approximation of the acreage of each: *53 Type
Acreage
Tillable land
285
Woodland
25
Marsh land
38
Shore land
75
Other
17
There were no paved roads on the property. Bridle paths which had been cut around the perimeter of the property were, during 1950, overgrown and not suitable for use. The woodland on the premises contained no saleable timber except for firewood. At decedent's death, the property was partially fenced with "cattle fences," a major portion of which was overgrown. Improvements located on the premises on the valuation date included: a residence composed of 10 rooms which was originally a tenant farm house and an adjoining garage; a manor house which was a brick structure badly in need of repair, having no central heating, no hot water, and no electricity; a four-car garage containing limited quarters, lacking hot water and central heating; and miscellaneous structures such as a dock extending some 90 feet into the Chester River; a boat house; a boat cradle and trackage capable of handling a 30-foot boat; a pump house; chicken house; barn; meat house; corn crib; hog house; sheep house; woodshed; and various implement sheds. During 1950, the firm of Marsh and McLannon insured the *54 enumerated buildings in the amounts shown below: Building
Coverage
Main dwelling
$34,000.00
Barn
17,200.00
Dwelling and garage
5,400.00
Implement shed
900.00
Stock shed
1,700.00
Corn crib
900.00
Poultry house
3,200.00
Manor house
5,200.00
Meat house
480.00
Wagon shed
650.00
Woodshed
80.00
Dog kennel
150.00
Hog house
100.00
Total
$69,960.00
Prior to the basic date, Carl O. Hoffman, an attorney with extensive real estate experience, had assisted the decedent in his attempts to sell "Godlington Manor," and subsequent thereto represented the estate and petitioners. Shortly before decedent's death, Hoffman and his brother offered the decedent $75,000 cash for the property. The offer was rejected as being too low. In July of 1940, decedent listed "Godlington Manor" for sale at a price of $135,000 with William Clarke Grieb, a realtor licensed by the State of Maryland. Grieb advertised the property through a period as late as June 1950. Subsequent to May 4, 1950, but prior to October 24 of that year, Grieb secured an offer of $120,000 for the premises from Berkley Brandt. The offer called for purchase of the land with all the crops and machinery *55 located thereon included. Its terms required payment of $60,000 cash, the balance to be secured by a 10-year mortgage which was to permit, but not require, advance payments of principal during a 5 or 10-year term at the option of the seller, interest to run at 4 1/2 per cent. Grieb related this offer to Hoffman who rejected it. It was Hoffman's opinion that the offeror was financially unable to meet its terms, and that the offer was vague on the mortgage provisions. Release clauses would have been involved in the event the property was developed, and, if fiduciaries became parties thereto, Hoffman thought a cloud upon the title of the developed acreage would result. A second offer of $120,000 for "Godlington Manor" was made by Brandt on October 24, 1950. This offer was for the property, exclusive of farm machinery and crops, and provided, in part, for a 10-year mortgage of $65,000; $12,000 payable by check upon delivery of a satisfactory contract of sale, and $43,000 in cash upon delivery of a clear title and proper deed. Before this second offer was acted upon by representatives of decedent's estate, and some three weeks after it had been made by Brandt, it was withdrawn. The *56 withdrawal was based upon a discussion which Brandt had had with his wife, and their belief that, due to the Korean War, development of the property at that time would not be feasible. They felt that if the Korean conflict resulted in something like World War II, they could not build or sell, and therefore, under the circumstances, believed they were overextending themselves. During the period wherein the offers were made, Brandt was employed as an airline pilot, having an annual salary of $17,000 and income from other sources of some $5,000. His net worth was in the neighborhood of $250,000 to $300,000. He was familiar with the property, having inspected it some three times. W. R. Huey, whose banking experience of 48 years included numerous real estate appraisals, and William G. Smyth, a retired realtor with 27 years experience, were appointed by the Orphans Court of Kent County, Maryland, to appraise the property for state inheritance tax purposes. They valued the land and improvements as of the valuation date at $80,000. William Clarke Grieb, appearing on behalf of respondent, valued the property as of the same date at $138,350. He made his appraisal approximately one week *57 before March 31, 1956, the date of the hearing of this proceeding. In June 1950, a crop of corn and soy beans was planted on the property which covered about 200 acres. The crop subsequently was sold for approximately $11,400 gross. On May 4, 1950, "Godlington Manor" had a fair market value of $100,000. Opinion RICE, Judge: Extensive testimony was heard as to the fair market value for Federal estate tax purposes of "Godlington Manor" on the valuation date. Petitioners contend for a valuation of $80,000, respondent $120,000. Each called expert witnesses to substantiate their claims. Respondent's argument centers primarily on a rejected bid of $120,000 made for the property by Berkley Brandt. He argues that this was a bona fide offer on the part of a purchaser willing and able to purchase the property, and that, therefore, it is indicative of the fair market value. A bona fide offer, made by a willing and able purchaser, which is rejected by the seller, is some evidence of what the owner considered the lower limits of such value to be, Edward W. Payne, 12 B.T.A. 781 (1928), *58 but does not conclusively establish the fair market value of the property. To bolster his position he has utilized expert testimony to the effect that the property was worth $138,350. Petitioners presented the expert testimony of three witnesses, one of whom valued the property at $75,000, the other two at $80,000. Considering the record as a whole, including, but not limited to, the listed sales price of the property, insurance coverage on improvements, sales of comparable property, character of the land, development possibilities of the water front, and the offers to purchase which were rejected, we conclude that such evaluations are too low. As is usual in valuation cases, we have conflicting opinions by qualified witnesses, and, after carefully considering the whole record, we are of the opinion, and have found as a fact, that "Godlington Manor" had a fair market value of $100,000 on May 4, 1950. Decision will be entered under rule 50.